FILED
2019 Sep-11  PM 12:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **BEVERLY KAY WILLINGHAM,** | ) | |
| **Individually and as Administratrix of** | ) | |
| **the Estate of ANTHONY LEE** | ) | **CIVIL ACTION CASE NUMBER** |
| **WILLINGHAM,** | ) | |
| **deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **v.** | ) | |
| | ) | |
| **COLONIAL PIPELINE COMPANY** | ) | |
| **and SUPERIOR LAND DESIGNS,** | ) | |
| **LLC,** | ) | |

**COMPLAINT**

COMES NOW the Plaintiff, Beverly Kay Willingham, Individually and as Administratrix of the Estate of Anthony Lee Willingham, deceased, and files the following Complaint for Damages:

**PARTIES, JURISDICTION, VENUE and SERVICE**

1. Plaintiff Beverly Kay Willingham (hereinafter "Plaintiff") is over the age of majority and is a resident of Heflin, Alabama.  Plaintiff brings the present action Individually and as the duly appointed Administratrix of the Estate of Anthony Lee Willingham, deceased. Prior to his death, Anthony Lee Willingham (hereinafter the "Decedent") was a resident of Heflin, Alabama.

2. Defendant Colonial Pipeline Company (hereinafter "Colonial") is a

1

Delaware corporation with its principal place of business in Alpharetta, Fulton County, Georgia. Defendant Colonial is registered to do business in Alabama and was doing business in Alabama at all times material to this litigation. Defendant Colonial may be served by service of process on its registered agent, CSC of Cobb County, Inc., 192 Anderson Street SE, Suite 125, Marietta, Georgia 30060.

3.   Defendant Superior Land Designs, LLC (hereinafter "Superior") is a Georgia limited liability company with its principal office in Alpharetta, Fulton County, Georgia. Defendant Superior was doing business in Alabama at all times material to this litigation. Defendant Superior may be served by service of process on its registered agent, Jan Sigman, 100 Galleria Parkway, Suite 1600, Atlanta, Georgia, 30339.

4.   Venue is proper in this Court pursuant to 28 U.S.C. § 1332.  There is complete diversity among the parties and the amount in controversy exceeds $75,000.00.

## **FACTUAL ALLEGATIONS**

5.   Defendant Colonial owns and operates a multi-state refined petroleum pipeline system which runs from Houston, Texas to Linden, New Jersey (hereinafter "the Pipeline"). Constructed during the 1960's, the Pipeline is over five thousand miles long, and is the largest refined petroleum pipeline in the United States, delivering one hundred million gallons of petroleum products per

day.

6.    As owner and operator of the Pipeline, at all times Defendant Colonial had ultimate responsibility for its condition, operation, maintenance, and repair, including the excavation work described herein.

7.    Defendant Colonial also was responsible for knowing the condition of the Pipeline and its state of repair, and for providing this information to its contractors and agents/servants/employees.

8.    Defendant Colonial's duties with respect to the condition, operation, maintenance, and repair of the Pipeline are non-delegable.

9.    In September of 2016, a leak was discovered on the Pipeline in Shelby County, Alabama (hereinafter the "September Leak"), which resulted in a spill of over three hundred thousand (300,000) gallons of gasoline near the Cahaba River Wildlife Management Area.

10.    Following the discovery of the September Leak, the Pipeline and Hazardous Materials Safety Administration ("PHMSA") issued a Corrective Action Order requiring Defendant Colonial to shut down a portion of the Pipeline and take necessary corrective action to protect the public, property, and environment from hazards associated with the leak. Pursuant to Title 49, § 60112 of the United States Code, PHMSA issued the Corrective Action Order without prior notice or opportunity for a hearing, in part, because of Defendant Colonial's

history of problems or failures on the Pipeline, which include one hundred eighty-five (185) "significant incidents" in the ten years preceding the September Leak.

11.   The number, frequency, and severity of significant incidents is indicative of systemic failures in the Pipeline and/or Defendant Colonial's management of the Pipeline.

12.   The shutdown of the Pipeline had clear national implications, as it caused a significant disruption of the gasoline supply to the Southern and Eastern portions of the United States and caused a spike in gasoline prices.

13.   Following the September Leak and PHMSA's Corrective Action Order, Defendant Colonial was engaged in actions to remediate the leak, which necessitated excavating and accessing segments of the Pipeline and appurtenant equipment and materials which were not located in the immediate vicinity of the site of the September Leak.

14.   As part of the efforts to remediate the September Leak, Defendant Colonial engaged L.E. Bell Construction, Inc. (hereinafter "L.E. Bell") as an independent contractor to perform excavation and repairs of the Pipeline. During September and October of 2016, L.E. Bell stationed multiple crews in the Shelby County area to conduct such excavation and repair work.

15.   On information and belief, Defendant Colonial had a long history of

utilizing the services of L.E. Bell for pipeline exaction and repair work prior to September and October of 2016.

16.  Although L.E. Bell was engaged to perform excavation and repair work, Defendant Colonial was responsible for such work, and had a duty to ensure that its Pipeline was safe for excavation, and that excavation work was performed in a safe manner in compliance with federal rules and regulations, industry standards, and Colonial's own procedures.

17.  Defendant Colonial assigned one of its agents/servants/employees as its project inspector responsible for the work related to the September Leak performed by L.E. Bell.

18.  On October 31, 2016, the Decedent, Anthony Lee Willingham, was employed by L.E. Bell, and he was assigned to one of the crews performing excavation and repair work for the remediation efforts in Shelby County, Alabama (hereinafter the "L.E. Bell Crew").

19.  Defendant Colonial hired Defendant Superior as an additional, third-party inspector to supervise the excavation and repair work performed by the L.E. Bell Crew on October 31, 2016.

20.  As a third-party inspector, Defendant Superior shared Defendant Colonial's duty to ensure excavation and repair work was safe, and that excavation work was performed in a safe manner in compliance with federal rules

and regulations, industry standards, and Colonial's own procedures.

21.   Although Defendant Colonial engaged Defendant Superior regarding the October 31, 2016 excavation and repair work, Defendant Colonial was ultimately responsible for the excavations and repairs, and had a duty to ensure that the excavations were performed in a safe manner in compliance with federal rules and regulations, industry standards, and Colonial's own procedures.

22.   Defendant Colonial also had a duty to ensure that Defendant Superior's inspector was experienced and properly qualified.

23.   Defendant Superior assigned its agent/servant/employee, Chris Covey, to inspect at the site of the L.E. Bell Crew's excavations, and he was responsible for directing excavation activities and had a duty to stop work if the excavations were not safe or if any unsafe practices occurred.

24.   While working as an inspector at the site of the L.E. Bell Crew's excavations, Mr. Covey was also an agent/servant/employee of Defendant Colonial.

25.   Defendant Superior's inspector, Mr. Covey, lacked sufficient experience and qualifications.

26.   On the morning of October 31, 2016, the L.E. Bell Crew to which the Decedent was assigned performed an excavation of the Pipeline along County Road 91 in Shelby County, Alabama (hereinafter the "County Road 91

Excavation"). During the County Road 91 Excavation, Defendant Colonial's project inspector, Nicky Cobb, was on site. In addition, Defendant Superior's inspector, Mr. Covey, was present as the third-party inspector.

27. After work for the County Road 91 Excavation was completed, the L.E. Bell Crew, including the Decedent, drove to the site of a second excavation to be performed that day along River Road in Shelby County, Alabama (hereinafter the "Subject Excavation"). Members of the LE. Bell Crew transported equipment from the County Road 91 Excavation site to the Subject Excavation.

28. Defendant Superior's inspector, Mr. Covey, went to the site of the Subject Excavation; however, Colonial's project inspector, Mr. Cobb, failed to appear. Mr. Cobb instructed Mr. Covey that the Subject Excavation should go forward without him present. Mr. Covey had requested documentation from Mr. Cobb regarding the location of the Pipeline at the excavation sites, but the information was not provided to Mr. Covey.

29. The Subject Excavation, as planned, was intended to be an excavation to uncover one or more threaded O-ring fittings (hereinafter "TORs").

30. TORs are appurtenances installed on pipelines which permit access to the pipe interior. While TORs are buried below ground along with the pipelines, they extend several inches above the surface of the pipelines

themselves.

31.    At the Subject Excavation, the Decedent was assigned to operate a large "track hoe" excavator, which had been delivered to the site by members of the L.E. Bell Crew.

32.    Under Mr. Covey's direction, and pursuant to the custom and course of conduct between Defendant Colonial and L.E. Bell, the Decedent began digging with the "track hoe" above or near the location of the TORs on the Pipeline.

33.    As the Decedent was digging, the "track hoe" excavator struck either the Pipeline, one of the TORs, or a concrete pad installed over one of the TORs. As a result, the Pipeline ruptured, and a large spray of gasoline was released.

34.    The L.E. Bell Crew, Anthony Lee Willingham and Mr. Covey attempted to flee the site, but the gasoline ignited and a large explosion occurred (hereinafter the "Subject Explosion").

35.    The Subject Explosion burned for several days and received national media attention. As a result of the Subject Explosion, over one hundred seventy thousand gallons of gasoline were released, two workers were killed, and four others were injured.

36.    The Subject Explosion was foreseeable and could have been prevented.

37.   As a result of the subject explosion and fire, Anthony Lee Willingham was burned, injured, disfigured and he suffered and was killed.

## COUNT I
## NEGLIGENCE AGAINST COLONIAL PIPELINE COMPANY

38.   Plaintiff hereby incorporates by reference all preceding allegations as if fully set forth herein.

39.   Defendant Colonial breached a duty of care to the Decedent in multiple respects, including but not limited to: (1) failing to adopt and/or enforce adequate procedures, including but not limited to procedures for the safe excavation and repair of its Pipeline; (2) failing to have and maintain adequate information and records regarding the Pipeline and appurtenant equipment and material, and failing to provide adequate information and records to its contractors necessary for a safe excavation and repair of its Pipeline; (3) failing to warn regarding hazardous conditions of the Pipeline and appurtenant equipment and material; (4) failing to properly design, construct, mark, and/or install the Pipeline and appurtenant equipment and materials, and failing to ensure the proper design, construction, and/or installation of the same; (5) failing to properly inspect, monitor, assess, evaluate, and/or maintain the Pipeline, its integrity, the surrounding area, and appurtenant equipment and materials, and failing to ensure the proper inspection, monitoring, assessment, evaluation, and/or maintenance of the same; (6) failing to identify and/or correct hazardous conditions in the

Pipeline, its integrity, the surrounding area, and appurtenant equipment and materials; (7) failing to provide adequate personnel, supervision and oversight of individuals and/or entities it utilized in the inspection, repair, excavation and/or maintenance of the Pipeline, its integrity, the surrounding area, and appurtenant equipment and materials; (8) failing to operate its Pipeline in a safe manner and in a safe condition; (9) failing to install, failing to maintain, or removing safety devices and systems which protected the Pipeline, its integrity, the surrounding area, and appurtenant equipment and materials; (10) failing to properly assess, hire, train, and/or supervise its agents/servants/employees; (11) failing to have in place an appropriate emergency plan or procedures; (12) failing to have a competent inspector present, and permitting an unqualified individual to supervise and direct the excavation of the Pipeline and appurtenant equipment and materials; (13) failing to have in place plans and procedures specific to the Subject Excavation; (14) failing to adequately locate and mark the location of TORs and appurtenances, including concrete pads installed over TORS, on the Pipeline; (15) selecting and retaining contractors who were not competent and did not have adequate training, qualifications, and experience, and whose agents/servants/employees were not competent and did not have adequate training, qualifications, and experience; (16) selecting and retaining contractors who utilized unsafe work practices and/or failed to adhere to federal rules and

regulations, industry standards, and Colonial's own policies; (17) failing to stop unsafe work practices; (18) directly or indirectly instructing its contractors and/or their employees to perform actions and work practices that were not safe and were in violation of federal rules and regulations, industry standards, and Colonial's own policies; (19) fostering a culture whereby unsafe practices were not reported or stopped, and were allowed to proceed in order to expedite work; (20) failing to ensure that all workers at the Subject Excavation had adequate training, qualifications, and experience; and (21) allowing the Subject Excavation to proceed without adequate and/or necessary information, including the depth and location of the Pipeline and appurtenant equipment and material.

40. Defendant Colonial's failure to comply with its duties constitutes negligence.

41. The Subject Explosion was foreseeable and could have been prevented.

42. Defendant Colonial's breaches of duty combined and concurred with other wrongful conduct to proximately cause the injuries and death of the Decedent, Anthony Lee Willingham.

## COUNT II
## WANTONNESS AGAINST COLONIAL PIPELINE COMPANY

43. Plaintiff hereby incorporates by reference all preceding allegations as if fully set forth herein.

44. Prior to the subject explosion on October 31, 2016, Defendant Colonial had superior knowledge of the dangers, defects, hazards and/or risks associated with its Pipeline and appurtenant equipment and materials.

45. Prior to the subject explosion on October 31, 2016, Defendant Colonial: (1) received notice of numerous incidents where the design and/or condition of its pipelines and/or TORs caused construction crews to inadvertently strike it's pipelines; (2) knew that its 3rd party inspectors employed individuals who were not competent and did not have adequate training, qualifications, or experience; (3) knew that excavation crews of its contractors were allowed or directed to violate federal rules and regulations, industry standards, and Colonial's own policies; and (4) fostered a culture whereby unsafe practices were not reported or stopped, and were allowed to proceed in order to expedite work.

46. Prior to the subject explosion on October 31, 2016, Defendant Colonial knew fires and explosions like the subject fire and explosion which killed Anthony Lee Willingham would likely occur if its Pipeline was struck, yet it failed to properly maintain its pipeline, failed to properly document and locate the condition of the subject pipeline, TOR and/or concrete pad, failed to properly supervise its crews and failed to adhere to federal rules and regulations, industry standards, and Colonial's own policies.

47. Defendant Colonial, despite this knowledge, consciously and

recklessly disregarded the rights and safety of others, including the Decedent,
through its actions and inactions, including but not limited to: (1) failing to adopt
and/or enforce adequate procedures, including but not limited to procedures for
the safe excavation and repair of its Pipeline; (2) failing to have and maintain
adequate information and records regarding the Pipeline and appurtenant
equipment and material, and failing to provide adequate information and records
to its contractors necessary for a safe excavation and repair of its Pipeline; (3)
failing to warn regarding hazardous conditions of the Pipeline and appurtenant
equipment and material; (4) failing to properly design, construct, mark, and/or
install the Pipeline and appurtenant equipment and materials, and failing to
ensure the proper design, construction, and/or installation of the same; (5) failing
to properly inspect, monitor, assess, evaluate, and/or maintain the Pipeline, its
integrity, the surrounding area, and appurtenant equipment and materials, and
failing to ensure the proper inspection, monitoring, assessment, evaluation, and/or
maintenance of the same; (6) failing to identify and/or correct hazardous
conditions in the Pipeline, its integrity, the surrounding area, and appurtenant
equipment and materials; (7) failing to provide adequate personnel, supervision
and oversight of individuals and/or entities it utilized in the inspection, repair,
excavation and/or maintenance of the Pipeline, its integrity, the surrounding area,
and appurtenant equipment and materials; (8) failing to operate its Pipeline in a

safe manner and in a safe condition; (9) failing to install, failing to maintain, or removing safety devices and systems which protected the Pipeline, its integrity, the surrounding area, and appurtenant equipment and materials; (10) failing to properly assess, hire, train, and/or supervise its agents/servants/employees; (11) failing to have in place an appropriate emergency plan or procedures; (12) failing to have a competent inspector present, and permitting an unqualified individual to supervise and direct the excavation of the Pipeline and appurtenant equipment and materials; (13) failing to have in place plans and procedures specific to the Subject Excavation; (14) failing to adequately locate and mark the location of TORs and appurtenances, including concrete pads installed over TORS, on the Pipeline; (15) selecting and retaining contractors and/or 3rd party inspectors who were not competent and did not have adequate training, qualifications, and experience, and whose agents/servants/employees were not competent and did not have adequate training, qualifications, and experience; (16) selecting and retaining contractors who were allowed or instructed to violate federal rules and regulations, industry standards, and Colonial's own policies; (17) failing to stop unsafe work practices; (18) directly or indirectly instructing its contractors and/or their employees to perform actions and work practices that were not safe and were in violation of federal rules and regulations, industry standards, and Colonial's own policies; (19) fostering a culture whereby unsafe practices were

not reported or stopped, and were allowed to proceed in order to expedite work; (20) failing to ensure that all workers at the Subject Excavation had adequate training, qualifications, and experience; and (21) allowing the Subject Excavation to proceed without adequate and/or necessary information, including the depth and location of the Pipeline and appurtenant equipment and material.

48. The Subject Explosion was foreseeable and could have been prevented.

49. Defendant Colonial's wanton conduct combined and concurred with other wrongful conduct to proximately cause the injuries and death of the Decedent, Anthony Lee Willingham.

## COUNT III
## NEGLIGENCE PER SE AGAINST COLONIAL PIPELINE COMPANY

50. Plaintiff hereby incorporates by reference all preceding allegations as if fully set forth herein.

51. On information and belief, Defendant Colonial's negligent and wanton conduct described herein also breached a duty of care to the Decedent by violation of federal regulations found at 49 C.F.R. §§ 195.401, 195.402, and 195.422, as well as Colonial's own procedures having the force and effect of law.

52. Pursuant to 49 C.F.R. §§ 195.401 and 195.402(a) and (c), Defendant Colonial was required to adopt, follow, and enforce certain written procedures "to provide safety during maintenance and normal operations," including: (1) a written

procedure for "[m]aking construction records, maps, and operating history available as necessary for safe operation and maintenance;" and (2) a written procedure to insure that repairs to the Pipeline were "made in a safe manner." 49 C.F.R. §§ 195.401, 195.402(a), 195.402(c), 195.402(c)(1), 195.402(c)(3), 195.422(a).

53.    The aforementioned regulations requiring procedures for "safety during maintenance" operations, as well as the procedures themselves which have the force and effect of law, were adopted to protect a class of persons from physical injury: individuals within the vicinity of maintenance and repair operations on hazardous liquid pipelines. Decedent Anthony Willingham, who was on the site of the subject excavation in furtherance of maintenance operations, was within the class of persons intended to be protected by the aforementioned regulations and procedures, and his injuries and death are the type of harm intended to be prevented by said regulations and procedures.

54.    Defendant Colonial violated the requirements of 49 C.F.R. 401 and 402(c)(1) by failing to have, follow, or enforce a written procedure for "[m]aking construction records, maps, and operating history available as necessary for safe operation and maintenance," as personnel at the subject excavation did not have access to necessary records and information regarding the depth of the Pipeline and the existence, location and depth of appurtenances, including the TOR and

concrete pads which were struck by the "track hoe" excavator.

55.     Pursuant to the aforementioned regulations, Defendant Colonial had written procedures for safety during excavations. Said excavation procedure was intended to protect those in the vicinity of excavation operations, and it specifically references 49 C.F.R. § 195.422 as well as OSHA's excavation requirements at 29 C.F.R. § 1926.651, which were enacted to protect individuals working in the vicinity of an excavation.

56.     Defendant Colonial also violated the requirements of 49 C.F.R. 401, 402(c)(3), and 422(a) by failing to follow or enforce its written procedure for the safety of the excavation of the Pipeline, including: (1) permitting persons who were not properly trained and/or qualified to direct, participate in, assist, and/or perform the excavation; (2) permitting the excavation to proceed without a review of necessary records and information related to the Pipeline in the area of the excavation, including records regarding the depth and location of the Pipeline and appurtenances; (3) permitting the excavation to proceed without a proper inspection of the excavation site; (4) permitting the excavation to proceed without a specific plan for locating the Pipeline and its appurtenances before excavation; (5) permitting the excavation to proceed without a Job Hazard Analysis and/or safety meeting to identify potential hazards and what actions should be taken in the event the Pipeline was struck or a leak occurred; (6) permitting the excavation to

proceed when the depth and location of the Pipeline and its appurtenances, including the subject TOR and concrete pad, were not known and/or verified, and the excavation site had not been probed; (7) permitting the use of mechanical excavation equipment (the "track hoe" excavator) when the location and depth of the Pipeline had not been properly verified; (8) permitting the use of mechanical excavation equipment (the "track hoe" excavator) within two feet of the Pipeline and/or its appurtenances; (9) permitting the use of mechanical equipment (the "track hoe" excavator) directly over the Pipeline, as opposed to parallel to the Pipeline; (10) permitting the excavation to proceed and/or continue without the presence of the Colonial Project Inspector at the excavation site; and (11) permitting the excavation to proceed and/or continue without the presence of a competent person in the immediate area where the excavation was being performed.

57.     The foregoing violations of Colonial's own procedures and 49 C.F.R. 401, 402, and 422 combined and concurred with other conduct described herein to proximately cause the subject explosion and the injuries and death of the Decedent, Anthony Willingham. Specifically, the Pipeline was struck and gas was released because: (1) excavation personnel did not know the precise location and depth of the Pipeline and its appurtenances, including the subject TOR and concrete pad; (2) mechanical excavation equipment was used in close proximity to the Pipeline, in

violation of the procedures, which damaged the Pipeline to the extent that gasoline was released; and (3) persons who were not properly trained and/or qualified to direct, participate in, assist, and/or perform the excavation failed to identify hazards, and permitted the excavation to proceed in violation of the procedures. Further, the subject explosion and the injuries and death of the Decedent, Anthony Willingham occurred as a result of Defendant Colonial's failure to have or communicate an action plan for: (1) the safe evacuation of personnel in the event the Pipeline was struck or ruptured, which would have enabled the Decedent to safely escape danger; and (2) taking precautions to avoid ignition of the gasoline, including turning off motorized equipment.

58.    The Subject Explosion was foreseeable and could have been prevented.

59.    The negligent and wanton breaches of duty described hereinabove by Defendant Colonial constitutes negligence per se.

## COUNT IV
## NEGLIGENCE AGAINST SUPERIOR LAND DESIGNS

60.    Plaintiff hereby incorporates by reference all preceding allegations as if fully set forth herein.

61.    Defendant Superior breached a duty of care to the Decedent in multiple respects, including but not limited to: (1) failing to have in place an appropriate emergency plan or procedures; (2) failing to adopt and/or enforce

adequate procedures, including but not limited to procedures for the safe excavation and repair of the Pipeline promulgated by local, state, and national laws, regulations, ordinances, fire codes, industry standards, and/or safety codes, as well as Defendant Colonial's policies and procedures, which have the force and effect of law; (3) failing to provide adequate oversight necessary for a safe excavation and repair of the Pipeline; (4) authorizing, directing and permitting unsafe actions and work practices in the excavation of the Pipeline and appurtenant equipment and material; (5) failing to stop the Subject Excavation when it became unsafe; (6) failing to properly hire, train, and/or supervise its agents/servants/employees; (7) failing to have in place plans and procedures specific to the Subject Excavation; (8) failing to conduct an appropriate job safety analysis for the Subject Excavation; (9) assigning an agent/servant/employee as inspector for the Subject Excavation who was not competent, adequately trained, qualified, or experienced; (10) directing and/or permitting the performance of actions and work practices that were not safe and were in violation of federal rules and regulations, industry standards, and Colonial's own policies; (11) failing to ensure that all working at the Subject excavation had adequate training, qualifications, and experience; (12) failing to adequately hire, train, and/or supervise its agents, servants, and employees; and (13) allowing the Subject Excavation to proceed without adequate and/or

necessary information, including the depth and location of the Pipeline and appurtenant equipment and material.

62. Defendant Superior's failure to comply with its duties constitutes negligence.

63. The Subject Explosion was foreseeable and could have been prevented.

64. Defendant Superior's breaches of its duties combined and concurred with other wrongful conduct to proximately cause the injuries and death of the Decedent, Anthony Lee Willingham.

## COUNT V
## WANTONNESS AGAINST SUPERIOR LAND DESIGNS

65. Plaintiff hereby incorporates by reference all preceding allegations as if fully set forth herein.

66. Prior to the subject explosion on October 31, 2016, Defendant Superior had superior knowledge of the dangers, hazards and/or risks associated with the subject Pipeline and appurtenant equipment and materials.

67. Prior to the subject explosion on October 31, 2016, Defendant Superior: (1) received notice of numerous incidents where excavation crews had struck the Pipeline; (2) knew that excavation crews were not properly supervised; (3) knew that its agent/servant/employee, Chris Covey, was not competent and lacked proper qualifications, training and experience to serve as an inspector for

the Subject Excavation.

68. Prior to the subject explosion on October 31, 2016, Defendant Superior knew explosions like the subject explosion which killed Anthony Willingham could occur.

69. Defendant Superior, despite this knowledge, consciously and recklessly disregarded the rights and safety of others, including the Decedent, through its actions and inactions, including but not limited to: (1) failing to have in place an appropriate emergency plan or procedures; (2) failing to adopt and/or enforce adequate procedures, including but not limited to procedures for the safe excavation and repair of the Pipeline promulgated by local, state, and national laws, regulations, ordinances, fire codes, industry standards, and/or safety codes, as well as Defendant Colonial's policies and procedures, which have the force and effect of law; (3) failing to provide adequate oversight necessary for a safe excavation and repair of the Pipeline; (4) authorizing, directing and permitting unsafe actions and work practices in the excavation of the Pipeline and appurtenant equipment and material; (5) failing to stop the Subject Excavation when it became unsafe, including the use of unsafe actions and work practices in the excavation of the Pipeline and appurtenant equipment and material; (6) failing to properly hire, train, and/or supervise its agents/servants/employees; (7) failing to have in place plans and procedures specific to the Subject Excavation;

(8) failing to conduct an appropriate job safety analysis for the Subject Excavation; (9) assigning an agent/servant/employee as inspector for the Subject Excavation who was not competent, adequately trained, qualified, or experienced; (10) directing and/or permitting the performance of actions and work practices that were not safe and were in violation of federal rules and regulations, industry standards, and Colonial's own policies; (11) failing to ensure that all working at the Subject excavation had adequate training, qualifications, and experience; (12) failing to adequately hire, train, and/or supervise its agents, servants, and employees; and (13) allowing the Subject Excavation to proceed without adequate and/or necessary information, including the depth and location of the Pipeline and appurtenant equipment and material.

70. The Subject Explosion was foreseeable and could have been prevented.

71. Defendant Superior's wanton conduct combined and concurred with other wrongful conduct to proximately cause the injuries and death of the Decedent, Anthony Lee Willingham.

### COUNT VI
### NEGLIGENCE PER SE AGAINST DEFENDANT SUPERIOR

72. Plaintiff hereby incorporates by reference all preceding allegations as if fully set forth herein.

73. Defendant Superior's negligent and wanton conduct described herein

also breached a duty of care to the Decedent by violation of local, state, and national laws, regulations, ordinances, fire codes, industry standards, and/or safety codes, as well as Defendant Colonial's policies and procedures, which have the force and effect of law.

74. The Decedent was within the class of persons intended to be protected by said laws, regulations, ordinances, industry standards and/or safety codes, and is among the class of persons to whom such duty ran, and their injuries are the type of harm intended to be prevented by such laws, regulations, ordinances, industry standards and/or safety codes.

75. The Subject Explosion was foreseeable and could have been prevented.

76. The negligent and wanton breach of duty by Defendant Superior constitutes negligence per se.

77. The negligent and wanton breach of duty by Defendant Superior combined and concurred with other wrongful conduct to proximately cause the injuries and death of the Decedent, Anthony Lee Willingham.

## COUNT VII
## RESPONDEAT SUPERIOR

78. Plaintiff hereby incorporates by reference all preceding allegations as if fully set forth herein.

79. In committing the negligent and wanton conduct described

hereinabove, Defendant Colonial and Defendant Superior acted through agents/servants/employees who were acting within the course and scope of their agency or employment.

80. Defendant Colonial and Defendant Superior are responsible for the tortious conduct of their agents, servants, and employees under the doctrine of respondeat superior.

## COUNT VIII
## PLAINTIFF'S WRONGFUL DEATH CLAIM AGAINST ALL DEFENDANTS

81. Plaintiff Beverly Kay Willingham hereby incorporates by reference all preceding allegations as if fully set forth herein.

82. The Subject Explosion was foreseeable and could have been prevented.

83. The tortious conduct of Defendant Colonial and Defendant Superior described hereinabove combined and concurred to proximately cause the wrongful death of the Decedent, Anthony Lee Willingham.

84. Plaintiff Beverly Kay Willingham, as Administratrix of the Estate of Anthony Lee Willingham, deceased, files this claim for wrongful death pursuant to Alabama Code § 6-5-410.

85. Pursuant to the Alabama Wrongful Death Act, Alabama Code § 6-5-410, Plaintiff seeks punitive damages in an amount to be determined by a jury.

## COUNT IX
## PLAINTIFF'S LOSS OF CONSORTIUM CLAIM AGAINST ALL DEFENDANTS

86.   Plaintiff hereby incorporates by reference all preceding allegations as if fully set forth herein.

87.   As a result of the Decedent's death, Plaintiff Beverly Kay Willingham, as the surviving spouse, has experienced a loss of love, companionship, fellowship, cooperation, assistance, society, services, conversation, care, affection, emotional support, and physical aid and comfort, as well as her right to continuation of the normal marital relationship.

88.   The acts of the Defendants combined and concurred to proximately cause Plaintiff Beverly Kay Willingham's loss of marital services.

## PLAINTIFF'S PRAYER FOR RELIEF

WHEREFORE, Plaintiff Beverly Kay Willingham, Individually and as Administratrix of the Estate of Anthony Lee Willingham, deceased, respectfully requests the following:

a)   that a copy of the Summons and Complaint be served upon the Defendants;

b)   a trial by jury as to each and every appropriate issue;

c)   a judgment against the Defendants;

d)   an award of compensatory damages to be determined by a jury;

e)   an award of punitive damages to be determined by a jury;

f)       an award of punitive damages, pursuant to Ala. Code § 6-5-410, to be determined by a jury;

g)       reasonable attorney's fees and expenses of litigation;

h)       special damages in an amount to be determined later;

i)       that all costs of this action be cast against the Defendants; and

j)       any and all such other and further relief as the Court may deem just and appropriate.

*/s/ D. Michael Andrews*
D. MICHAEL ANDREWS (ASB-9591-V85A)
WARNER O. HORNSBY (ASB-8944-Y33G)
Attorneys for Plaintiff

OF COUNSEL:

BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, AL 36104
Telephone: (800) 898-2034
Facsimile: (334) 954-7555
Email: Mike.Andrews@BeasleyAllen.com
Email: Warner.Hornsby@BeasleyAllen.com

The Defendants may be served as follows:
Defendant Colonial Pipeline Company
c/o CSC of Cobb County, Inc.
192 Anderson Street SE, Suite 125
Marietta, GA 30060

Defendant Superior Land Designs, LLC
c/o Jan Sigman
100 Galleria Pkwy, Suite 1600
Atlanta, GA 30039